UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ANDREA GRAVAGNA, | : | |
| | : | No. 08-cv-5448 (LAK-THK) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| TERMINIX INTERNATIONAL, INC., | : | |
| THE SERVICEMASTER COMPANY, | : | |
| JENNIFER HOWARD, | : | |
| | | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION
### AND TO STAY THE PROCEEDINGS


Dated: New York, New York
       June 20, 2008



Of Counsel:

        Dov Kesselman (DK-6571)
        Rosemary Joyce (RJ-7393)


### SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendants
Defendants Terminix International, Inc.
and The ServiceMaster Company

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 3

    I.     PLAINTIFF'S KNOWING AND VOLUNTARY ACCEPTANCE OF
           TERMINIX'S ARBITRATION AGREEMENT ...................................................... 3

    II.    PLAINTIFF'S COMPLAINT WITH THE NEW YORK STATE
           DIVISION OF HUMAN RIGHTS, HER HASTY WITHDRAWAL
           OF HER COMPLAINT PRIOR TO HEARING, AND HER
           BASELESS CLAIMS OF MISCONDUCT ............................................................ 4

    III.   DEFENDANTS' GOOD FAITH EFFORTS TO AVOID MOTION
           PRACTICE AND CONVINCE PLAINTIFF TO COMPLY WITH
           THE TERMS OF THE PARTIES' ARBITRATION AGREEMENT ................... 7

    IV.   DEFENDANTS HAVE NOT ENGAGED IN ANY LITIGATION
           WITH PLAINTIFF OR OTHERWISE INDICATED AN INTENT TO
           WAIVE ARBITRATION IN FAVOR OF JUDICIAL LITIGATION ................. 8

ARGUMENT ........................................................................................................................ 9

    I.     PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER
           CLAIMS IN ACCORDANCE WITH THE PARTIES' VALID AND
           BINDING AGREEMENT TO ARBITRATE ........................................................ 9

          A.    Both Federal And New York Law Strongly Favor
                 Arbitration ......................................................................................... 9

          B.    The Agreement To Arbitrate Plaintiff's Employment-
                 Related Claims Is Valid, And Plaintiff's Claims Fall
                 Within The Scope Of The Agreement ........................................... 10

    II.    THIS COURT SHOULD REJECT PLAINTIFF'S UNAVAILING
           ARGUMENTS THAT SHE SHOULD BE RELIEVED OF HER
           OBLIGATION TO ARBITRATE ........................................................................ 13

          A.    Plaintiff Cannot Escape Her Duty To Arbitrate By
                 Claiming She Does Not Remember Signing The
                 Agreement To Arbitrate ................................................................. 13

i

B.      Defendants Have Not Waived Their Right To Enforce
        The Parties' Agreement To Arbitrate ............................................13

III.    DEFENDANTS SHOULD BE AWARDED ATTORNEYS' FEES
        AND COSTS FOR HAVING TO BRING THIS ACTION TO
        COMPEL ARBITRATION, GIVEN THE CLEAR APPLICATION
        OF THE AGREEMENT AND PLAINTIFF'S BAD FAITH
        REFUSAL TO WITHDRAW THE COMPLAINT..............................................17

CONCLUSION..........................................................................................................18

NY1 26516372.2

# TABLE OF AUTHORITIES

## CASES

Alford v. Dean Witter Reynolds, Inc.,
  975 F.2d 1161 (5th Cir. 1992) .........................................................................9

Allied Bldg. Inspectors Int'l Union of Operating Eng'rs, Local No. 211 v. Office of Labor
  Relations, 45 N.Y.2d 735, 408 N.Y.S.2d 476 (1978) ......................................16

American Express Fin. Advisors, Inc. v. Zito,
  45 F. Supp. 2d 230 (E.D.N.Y. 1999) ..............................................................13

Baldeo v. Darden Rests., Inc.,
  No. 04-CV-2185 (JG), 2005 WL 44703 (E.D.N.Y. Jan. 11, 2005) ...................12

Bercovitch v. Baldwin Sch.,
  133 F.3d 141 (1st Cir. 1998)..............................................................................9

Brandt/Polaris Corp. v. Polaris Indus.,
  No. 95 Civ. 1321 (HB), 1995 WL 422138 (S.D.N.Y. July 17, 1995) ...............16

Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,
  189 F.3d 289 (2d Cir. 1999)..............................................................................10

Collins & Aikman Prods. Co. v. Building Sys.,
  58 F.3d 16 (2d Cir. 1995) ..................................................................................9

Cooper v. Bruckner,
  21 A.D.3d 758, 801 N.Y.S.2d 19 (1st Dep't 2005)...........................................10

Dancu v. Coopers & Lybrand,,
  778 F. Supp. 832 (E.D. Pa. 1991) .....................................................................9

DeBono v. Washington Mut. Bank,
  No. 05 Civ. 10333 (DC), 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006) ............11

DiCrisci v. Lyndon Guar. Bank of New York,
  807 F. Supp. 947 (W.D.N.Y. 1992)...................................................................15

Doctor's Assocs., Inc. v. Distajo,
  107 F.3d 126 (2d Cir. 1997)..............................................................................13

Doctor's Assocs., Inc. v. Distajo,
  66 F.3d 438 (2d Cir. 1995).................................................................................14

iii

DuBois v. Macy's East Inc.,
    No. 06-CV-6522 (NGG/LB), 2007 WL 3193169 (E.D.N.Y. July 13, 2007) ...................12

Elwell v. Google, Inc.,
    No. 05 Civ. 6498 (DLC), 2006 WL 217978 (S.D.N.Y. Jan. 30, 2006) ...........................11

Farino v. Advest, Inc.,
    111 F.R.D. 345 (E.D.N.Y. 1986) .....................................................................................17

Feffer v. Goodkind, Wechsler, Labaton & Rudoff,
    152 Misc.2d 812, 578 N.Y.S.2d 802 (N.Y. Sup. Ct. 1991) ..............................................17

Fein v. Gen. Elec. Co.,
    40 A.D.3d 807, 835 N.Y.S.2d 736 (2d Dep't 2007)..........................................................14

Fletcher v. Kidder, Peabody & Co.,
    81 N.Y.2d 623, 601 N.Y.S.2d 686 (1993) ........................................................................12

Genesco, Inc. v. T. Kakiuchi & Co.,
    815 F.2d 840 (2d Cir. 1987)...........................................................................................9, 11

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20, 111 S. Ct. 1647 (1991)..................................................................................11

Gilmore v. Shearson/American Express, Inc.,
    668 F. Supp. 314 (S.D.N.Y. 1987)....................................................................................13

Gold v. Deutsche Aktiengesellschaft,
    365 F.3d 144 (2d Cir. 2004)..............................................................................................11

Haenel v. Washington Mut. Bank, No. CV 07-2320,
    2007 WL 4326828 (E.D.N.Y. Dec. 6, 2007) ....................................................................13

Hall v. MetLife Res./Div. of Metro. Life Ins. Co.,
    No. 94 Civ. 0358 (JFK), 1995 WL 258061 (S.D.N.Y. May 3, 1995) ...............................12

Herzog v. Oberlander,
    No. 9074/02, 19 Misc.3d 1113(A, 2008 WL 880184 (N.Y. Sup. Ct. 2008) ..............10, 15

Hoffman v. Fidelity & Deposit Co.,
    734 F. Supp. 192 (D.N.J. 1990) .........................................................................................9

Leadertex v. Morganton Dyeing & Finishing Corp.,
    67 F.3d 20 (2d Cir. 1995) ..................................................................................................16

Litaker v. Lehman Bros. Holdings, Inc.,
    No. 97 Civ. 1607 (DC), 1999 WL 619638 (S.D.N.Y. Aug. 16, 1999) ............................12

Malone Golf Club, Inc. v. Moore Golf, Inc.,
    147 A.D.2d 879, 538 N.Y.S.2d 100 (3d Dep't 1989) ........................................16

Manos v. Geissler,
    321 F. Supp. 2d 588 (S.D.N.Y. 2004) ...............................................................16

Maye v. Smith Barney Inc.,
    897 F. Supp. 100 (S.D.N.Y. 1995) ....................................................................12

Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,
    460 U.S. 1, 103 S. Ct. 927 (1983) .......................................................................9

Nardi v. Povich,
    12 Misc.3d 1188(A), 824 N.Y.S.2d 764 (N.Y. Sup. Ct. 2006) ........................12

North Ferry Co., Inc. v. Local 333, United Marine Div.,
    338 F. Supp. 2d 430 (E.D.N.Y. 2004) ..............................................................11

PPG Indus. v. Webster Auto Parts,
    128 F.3d 103 (2d Cir. 1997).............................................................................14

Roby v. Corp. of Lloyd's,
    996 F.2d 1353 (2d Cir. 1993)...........................................................................10

Scott v. Farm Family Life Ins. Co.,
    827 F. Supp. 76 (D. Mass. 1993) .......................................................................9

Seafarers Int'l Union of N. Am. v. Point Vail Co.,
    No. 84 Civ. 2689 (PKL), 1985 WL 5940 (S.D.N.Y. Feb. 7, 1985)...................17

Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc.,
    636 F. Supp. 750 (D.P.R. 1986)........................................................................9

Smith Barney Shearson Inc. v. Sacharow,
    91 N.Y.2d 39, 666 N.Y.S.2d 990 (1997) ........................................................10

Sparling v. Hoffman Constr. Co.,,
    864 F.2d 635 (9th Cir. 1988) ..........................................................................9

Stark v. Molod Spitz DeSantis & Stark, P.C.,
    9 N.Y.3d 59, 845 N.Y.S.2d 217 (2007) ..........................................................10

Stern v. Espeed, Inc.,
    No. 06 Civ. 958 (PKC), 2006 WL 2741635 (S.D.N.Y. Sept. 22, 2006)............................13

Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,
    754 F.2d 457 (2d Cir. 1985)............................................................................................15

## STATUTES & RULE

9 U.S.C. § 3................................................................................................................................9

9 U.S.C. § 4................................................................................................................................9

28 U.S.C. § 1927........................................................................................................................18

Fed. R. Civ. P. 11......................................................................................................................18

NY1 26516372.2

Defendants Terminix International, Inc. ("Terminix") and the ServiceMaster Company (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for an order: (a) compelling arbitration of the claims alleged in the Verified Complaint of plaintiff Andrea Gravanga ("Plaintiff"); (b) staying this litigation pending the conclusion of arbitration proceedings; and (c) granting Defendants their attorneys' fees and costs in bringing this motion.[1]

## PRELIMINARY STATEMENT

Defendants bring this motion to compel arbitration pursuant to the clear obligations of an undisputed Arbitration Agreement signed by Plaintiff, and consistent the strong federal and state policy supporting arbitration.  Plaintiff, a former employee of Terminix, filed this action alleging age discrimination in direct contravention of the Arbitration Agreement that she entered into with Terminix and in which she agreed to submit to arbitration all disputes arising out of her employment.  Despite Plaintiff having been advised of her duty to arbitrate *months in advance* of her filing of her Complaint, and having been reminded again after the filing of this action, Plaintiff has shown a complete disregard for the clear obligations under the Arbitration Agreement, and insists on wasting this Court's and Defendants' time and resources in forcing a motion to compel a dispute that is clearly arbitrable.  Indeed, Plaintiff does not — and cannot — dispute the validity of the arbitration agreement, nor can she dispute that her claims are covered by this agreement.

Instead, Plaintiff attempts to avoid her obligation to arbitrate this dispute by making flawed arguments that are belied by both the law and the facts.  First, Plaintiff unavailingly claims that she "had no recollection of her own of having signed [the] arbitration agreement"

---

[1]    Defendant Jennifer Howard has not been served with the Complaint.  Defendants note, however, that Ms. Howard has expressed her intent to similarly compel arbitration should she be served with the Complaint.

(Compl. ¶ 46).  Second, Plaintiff's counsel incredibly accuses counsel for Terminix of purposely "hid[ing] the existence of [the] arbitration agreement" (Compl. ¶ 51).  Essentially, Plaintiff argues that Defendants somehow "waived" their right to arbitrate, and that she should somehow be relieved of her duty to arbitrate simply because (1) she supposedly "forgot" that she signed the agreement (although she, of course, cannot deny having entered into the agreement); and (2) according to Plaintiff, counsel for Terminix somehow "obviously knew" that Plaintiff's counsel was not in possession of or had knowledge about the existence of the arbitration agreement (and therefore, should have advised counsel of its existence even earlier than it already did).  (Compl. ¶ 52.)  Notably, Defendants have not engaged in <u>no</u> litigation activity, discovery, or otherwise done anything even remotely suggesting that they intended to waiver their right to arbitration.

As set forth below, Plaintiff's arguments are not only both legally and factually unavailing, but they belie Plaintiff's apparent regret of her own missteps in unilaterally deciding to withdraw Plaintiff's complaint from the New York State Division of Human Rights ("NYSDHR" or the "Division") on the eve of a factual hearing.  Defendants cannot and should not be deprived of the arbitration agreement that the parties agreed to simply because Plaintiff "forgot" that she had signed the agreement to arbitrate or because Plaintiff's counsel failed to realize that his client was subject to an arbitration agreement.  Nor can Plaintiff cite to a single case to support the unfounded argument that Terminix in any way waived its right to arbitration.  As such, Defendants respectfully request that the Court compel arbitration and stay this action.  Moreover, in light of Defendants' repeated good faith efforts to avoid the need for this motion and Plaintiff's bad faith refusal to withdraw the action in favor of arbitration, Defendants respectfully request an award of its costs and attorneys' fees in bringing this motion.

2

## STATEMENT OF FACTS

I.    **PLAINTIFF'S KNOWING AND VOLUNTARY ACCEPTANCE OF THE ARBITRATION AGREEMENT**

Plaintiff was hired by Terminix on or around February 15, 2007 as a Commercial Account Manager in Terminix's Flushing, New York branch at the age of 61.  (Compl. ¶¶ 18-19.)  After six months of poor performance, failure to come close to meeting her sales goals, and failure to show any improvement, her employment was terminated six months later, on or around July 23, 2007.  (Compl. ¶ 40.)

At the beginning of her employment with Terminix, Plaintiff expressly agreed to arbitrate any disputes with Terminix and explicitly waived any right to have such disputes heard before a court or a jury.  (Declaration of Rosemary Joyce, Esq., dated June 19, 2008 ("Joyce Decl."),  Ex. A (Arbitration Agreement)[2].)  Specifically, on or around February 15, 2007, Plaintiff read, signed, and dated "The Terminix International Company Limited Partnership Arbitration Agreement" (the title of which is in bold, capital letters) (the "Agreement").  (Id.)  Paragraph one of the Agreement explains and sets forth the parties' agreement to arbitrate all employment disputes:

> 1.    **Agreement to Arbitrate All Employment Disputes.**  Private arbitration is the referral of a dispute to an impartial third party, instead of a court or jury, for a final and binding decision.  Any dispute arising out of Employee's employment and/or termination of employment with Employer will be submitted to binding arbitration in accordance with the then-current National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA").  Employer and Employee each expressly waive entitlement, if any, to have any such dispute heard before a court or jury.

(Joyce Decl., Ex. A ¶ 1) (emphasis added).

---

[2]    A copy of the Arbitration Agreement is also attached to Plaintiff's Complaint as Exhibit E.

Plaintiff's Complaint – which alleges that she was discriminated against on the basis of her age and retaliated against for purported protected activity – is clearly covered by the Agreement, which specifically references "discrimination" and "retaliation" claims in the paragraph governing arbitrable claims:

> **2.    Arbitrable Claims.**  Except as otherwise provided by law, this Agreement applies to <u>any dispute arising out of or related to Employee's employment and/or termination of employment</u> with Employer, including but not limited to, claims for breach of contract, express or implied, <u>claims of discrimination and/or retaliation</u>, claims alleging violation of public policy, whistleblower claims, torts <u>and/or any other claims based on upon any federal, state or local ordinance, regulation, statute,</u> constitutional provision and any other non-statutory claims (excluding claims for workers compensation benefits and unemployment insurance benefits).

(Joyce Decl., Ex. A ¶ 2) (emphasis added).

## II.    PLAINTIFF'S COMPLAINT WITH THE NEW YORK STATE DIVISION OF HUMAN RIGHTS, HER HASTY WITHDRAWAL OF HER COMPLAINT PRIOR TO HEARING, AND HER BASELESS CLAIMS OF MISCONDUCT

While Plaintiff's Complaint attempts to portray Defendants and Defendants' counsel as somehow misleading Plaintiff as to the arbitration clause and causing her to withdraw her complaint from the NYSDHR, the facts reveal that Plaintiff did so in a unilateral, desperate, and last-minute effort to avoid moving forward with a fact-finding conference before the Division.

On or around August 3, 2007, the NYSDHR notified Terminix that Plaintiff had filed a complaint with the agency alleging that Terminix had discriminated against her on the basis of age.  (Joyce Decl. ¶ 3.)  Terminix filed a Statement of Position with the Division, denying the allegations in the Complaint, on September 24, 2007.  (Id.)

On December 26, 2007, the NYSDHR contacted Rosemary Joyce, counsel for Terminix, for the first time since submission of Terminix's Statement of Position in September.  (Id. ¶ 4.) The Division indicated that it would now be focusing on this matter closely and was clearly placing it on the fast track for resolution.  (Id.)  In a follow-up letter to Ms. Joyce that same day,

4

the Division memorialized its requests for additional information from Terminix and further stated that it had been unable to get in contact with David Gottlieb, Plaintiff's attorney.  (Id. ¶ 4 & Ex. B.)  Because of the Division's inability to reach Mr. Gottlieb, a two-party conference was tentatively scheduled for January 3, 2008.  (Id.)  Prior to this day, Terminix was not aware that Mr. Gottlieb represented Plaintiff, as Mr. Gottlieb had never contacted counsel for Terminix or identified himself as Plaintiff's attorney to counsel for Terminix in the preceding months.  (Id.)

It turned out, as the Division subsequently informed counsel for Terminix, that Plaintiff was not available for the conference on January 3, and the conference was therefore postponed. (Id. ¶ 5.)  In the meantime, Terminix quickly gathered the information the Division had requested on short notice and, at the suggestion of the Division, agreed to explore the possibility of conciliation or settlement.  (Id.)  On or around December 31, 2007, Ms. Joyce contacted Mr. Gottlieb to introduce herself and seek a settlement proposal from him.  (Id. ¶ 5.)  Ms. Joyce was unable to reach him and left him a voicemail to this effect.  (Id..)  A week passed, and Ms. Joyce did not hear back from Mr. Gottlieb – indeed, Ms. Joyce still had not heard back from Mr. Gottlieb by the time Terminix received a Notice of Conference from the NYSDHR on Monday, January 7, 2008 scheduling the fact-finding conference for the following week on January 15, 2008.  (Id. ¶ 6 & Ex. C.)  Some "phone tag" between Ms. Joyce and Mr. Gottlieb ensued, and the two did not speak for the first time until Wednesday, January 9, 2008.  (Id. ¶ 7.)  During this phone conversation, Mr. Gottlieb made a settlement proposal for the first time.  (Id.)  Ms. Joyce told Mr. Gottlieb that she would speak with her client about his proposal and get back to him as soon as possible.  (Id.)

The following day (Thursday, January 10, 2008), Mr. Gottlieb sent Ms. Joyce a letter asking her to "promptly advise" him of Terminix's position on settlement, or else he would

remove the action from the Division, commence a state court action, and/or file a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 8, Ex. D.)  Ms. Joyce called Mr. Gottlieb that same day and left him a voicemail advising Mr. Gottlieb that her client was out of town until that Friday (January 11, 2008), and that she would not be able to have a meaningful settlement discussion with her client until he returned.  (Id.)  Rather than returning Ms. Joyce's phone call or waiting to hear what Terminix's position might be, Plaintiff's counsel hastily elected to send Ms. Joyce a letter the following day (Friday, January 11, 2008), unilaterally informing her that "the . . . matter has been withdrawn from the State Division of Human Rights" and asking whether she would "accept service of the state court complaint."  (Id. ¶ 9, Ex. E.)  Up until this point, Terminix had been preparing for the January 15, 2008 fact-finding conference, was extremely confident in its case, and had every interest in proceeding before the Division.  (Id. ¶ 10.)

In any event, in conferring with her client on the issue of accepting service and reviewing the files after receiving Plaintiff's January 11 letter, it became apparent that Plaintiff was subject to an arbitration agreement, such that acceptance of service a state court complaint would not be appropriate.  (Id. ¶ 11.)  Ms. Joyce had not focused on this issue before because it was not previously relevant, as no agreement could preclude complainant's right to pursue an administrative complaint before the NYSDHR, and her actions were undertaken entirely in good faith. (Id.)  Indeed, the Agreement itself makes clear:

> **10.    Right to File Administrative Complaint.**  Nothing in the Agreement will prevent Employee from filing a complaint with the Equal Employment Opportunity Commission or National Labor Relations Board, or any other federal or state agency.

(Joyce Decl. Ex. A, ¶ 10.)

After the existence and applicability of the Agreement was confirmed (over the course what amounted to only three business days after having received Mr. Gottlieb's January 11 letter), Ms. Joyce promptly called Mr. Gottlieb on Wednesday, January 16, 2008 and told him that while she would accept service on behalf of Terminix, it would have to be service of a demand for arbitration, rather than a state court complaint, in light of the agreement to arbitrate Plaintiff had signed.  (Id. ¶ 12.)  Mr. Gottlieb asked Ms. Joyce to provide him with a copy of arbitration agreement, which she immediately did, reiterating Terminix's position in no uncertain terms: "As I noted during our conversation, we are authorized to accept service on behalf of our client, but we assume that you will be filing and serving a demand for arbitration in light of the attached agreement.  Please be advised that if you do initiate a state court action, we will be forced to move to compel arbitration and will seek attorneys' fees and costs associated therewith."  (Id., ¶ 12, Ex. F.)  As such, Mr. Gottlieb was on actual notice at least as early as January 16, 2007 that his client was subject to a valid arbitration agreement – precluding a state court action – that Defendants intended to enforce.  (Id.)

## III. DEFENDANTS' GOOD FAITH EFFORTS TO AVOID MOTION PRACTICE AND CONVINCE PLAINTIFF TO COMPLY WITH THE TERMS OF THE PARTIES' ARBITRATION AGREEMENT

Defendants' counsel did not hear from Plaintiff's counsel again until two months later, on or around March 14, 2008, when he called Ms. Joyce and tried to resurrect the parties' settlement discussions.  (Joyce Decl. ¶ 13.)  At this time, Mr. Gottlieb suggested that Terminix had somehow "waived" its right to enforce the parties' settlement agreement because Mr. Gottlieb did not learn about the existence of the Agreement until the day after the case before the Division

was closed.[3]  (Id.)  Ms. Joyce again advised Mr. Gottlieb that the Agreement governed Plaintiff's dispute, and also explained that the Agreement was a non-issue during the proceedings before the Division, and that Terminix in no way "waived" its right to enforce the Agreement.  (Id. ¶ 14.)  Nor had Defendants have not engaged in any litigation with Plaintiff to raise a waiver argument.  (Joyce Decl. ¶ 17.)  Nevertheless, Plaintiff proceeded to file the instant Complaint with this Court after another two months had passed, on or around May 19, 2008 – at which point Plaintiff's counsel had been aware of the existence of the Agreement for at least five months.  (Id.)

After Plaintiff filed this Complaint, counsel for Defendants once again contacted counsel for Plaintiff on June 3, 2008 in a good faith effort to avoid unnecessary motion practice, to again advise him of Plaintiff's obligation to arbitrate this dispute and of Defendants' intention to move to compel arbitration if Plaintiff insisted on ignoring this obligation and pursuing her claim in this Court.  (Id. ¶ 16.)  Defendants' counsel asked Mr. Gottlieb to withdraw Plaintiff's Complaint and instead file a demand for arbitration in accordance with the parties' Agreement.  (Id.)  Mr. Gottlieb refused, thereby forcing Defendants to make the instant motion.  (Id.)

## IV.    DEFENDANTS HAVE NOT ENGAGED IN ANY LITIGATION WITH PLAINTIFF OR OTHERWISE INDICATED AN INTENT TO WAIVE ARBITRATION IN FAVOR OF JUDICIAL LITIGATION

Defendants have not engaged in any litigation with Plaintiff, nor have they conducted any discovery or taken any other actions that could be considered a waiver of Defendants' right to arbitration.  (Id. ¶ 17.)  As such, Plaintiff has not experienced any prejudice that could raise an issue of waiver.  (Id.)

---

[3]      Notably, there is no evidence that Plaintiff's counsel ever tried to contact the Division to reinstate or refile the Complaint after learning about the existence of the Arbitration Agreement, or otherwise attempt to retract the annulment of her Complaint with the Division.

# ARGUMENT

## I.    PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS IN ACCORDANCE WITH THE PARTIES' VALID AND BINDING AGREEMENT TO ARBITRATE

### A.    Both Federal And New York Law Strongly Favor Arbitration

Federal and New York policy both strongly favor arbitration.  The Agreement signed by the parties is governed and construed in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  (Joyce Decl., Ex. A, ¶ 11.)  The FAA provides that where, as here, an arbitration exists, the court "shall . . . stay the trial of the action until such arbitration has been had" (9 U.S.C. § 3), and "shall make an order directing the parties to proceed to arbitration." (9 U.S.C. § 4).[4]  In accordance with the FAA, "[f]ederal policy strongly favors arbitration as an alternative dispute resolution process."  Collins & Aikman Prods. Co. v. Building Sys., 58 F.3d 16, 19 (2d Cir. 1995) (citation omitted).  The Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983).  Accordingly, "federal policy favoring arbitration requires [courts] to construe arbitration clauses as broadly as possible."  Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 847 (2d Cir. 1987).

---

[4]      Although § 3 of the FAA provides for a stay of any lawsuit until arbitration has been completed, numerous courts have found that where, as here, all of the issues presented in a lawsuit are arbitrable, the district court may dismiss, rather than stay, the action.  See, e.g., Bercovitch v. Baldwin Sch., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Scott v. Farm Family Life Ins. Co., 827 F. Supp. 76, 80 (D. Mass. 1993) (compelling arbitration of all claims and granting motion to dismiss); see also Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration. . . . [and] although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration.  Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.  Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.") (citing Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc., 636 F. Supp. 750, 757 (D.P.R. 1986); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 636 (9th Cir. 1988) (holding that 9 U.S.C. § 3 does not preclude dismissal); Hoffman v. Fidelity & Deposit Co., 734 F. Supp. 192, 195 (D.N.J. 1990) (dismissing action after determining that all claims were arbitrable); Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991) (accord), aff'd mem., 972 F.2d 1330 (3d Cir. 1992)).

The Second Circuit has interpreted this mandate to require arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993) (quotations omitted).

Likewise, New York also has a "long and strong public policy favoring arbitration." Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 49, 666 N.Y.S.2d 990, 995 (1997); Cooper v. Bruckner, 21 A.D.3d 758, 758, 801 N.Y.S.2d 19, 20 (1st Dep't 2005) ("New York public policy favors enforcement of contracts for arbitration."). Specifically, "this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. Therefore, New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." Stark v. Molod Spitz DeSantis & Stark, P.C., 9 N.Y.3d 59, 66, 845 N.Y.S.2d 217 (2007) (quoting Smith Barney Shearson, 91 N.Y.2d at 49-50, 666 N.Y.S.2d at 995-96). Further, "[a]ny doubts as to whether an issue is arbitrable will be resolved in favor of arbitration." Herzog v. Oberlander, No. 9074/02, 19 Misc.3d 1113(A) (table), 2008 WL 880184, at *7 (N.Y. Sup. Ct. 2008) (quotations omitted).

The Arbitration Agreement, consistent with the strong federal and state public policy, compel the conclusion that Defendants' motion to compel arbitration and to stay the proceedings should be granted, and that Plaintiff's feeble attempts to avoid her obligation to arbitrate should be rejected out of hand.

### B.    The Agreement To Arbitrate Plaintiff's Employment-Related Claims Is Valid, And Plaintiff's Claims Fall Within The Scope Of The Agreement

A court faced with a request to stay or compel arbitration addresses two questions: (1) whether the parties have agreed to arbitrate; and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement. Chelsea Square Textiles, Inc. v. Bombay Dyeing

10

& Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999); North Ferry Co., Inc. v. Local 333, United

Marine Div., 338 F. Supp. 2d 430, 433 (E.D.N.Y. 2004); see also Genesco Inc., 815 F.2d at 844.

It cannot be contested that each of these prongs has been satisfied.

It is undisputed that Plaintiff and Defendants entered into a valid agreement to arbitrate.

Plaintiff signed and agreed to the terms set forth in the Agreement at the beginning of her

employment with Terminix in February 2007, under which the parties agreed that "[a]ny dispute

arising out of [Plaintiff's] employment" would be "submitted to binding arbitration." (Joyce

Decl. Ex. A ¶ 2.)    Likewise, it is clear and unmistakable that Plaintiff's claims of age

discrimination and retaliation fall squarely within the scope of the Agreement.    Indeed, the

Agreement explicitly states that it applies to any dispute arising out of Plaintiff's employment or

termination of employment, and the Agreement specifically identifies claims of discrimination

and retaliation as being subject to arbitration.  (Id.)

Moreover, employment discrimination claims have consistently been held to be

arbitrable, and agreements to arbitrate like the one Plaintiff entered into are repeatedly deemed

valid and binding and are upheld by both state and federal courts alike.    See, e.g., Gilmer v.

Interstate/Johnson Lane Corp., 500 U.S. 20, 23, 111 S. Ct. 1647, 1650 (1991) (holding that claim

under the ADEA was subject to compulsory arbitration pursuant to an arbitration agreement in a

securities registration application); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147-48

(2d Cir. 2004) (Title VII claims could be subject to compulsory arbitration pursuant to broad

clause in NASD form signed by employee); DeBono v. Washington Mut. Bank, No. 05 Civ.

10333 (DC), 2006 WL 3538938, at *2-4 (S.D.N.Y. Dec. 8, 2006) (binding arbitration agreement

plaintiff was required to sign condition of employment was valid and enforceable, and Title VII

claims discrimination, retaliation, and harassment claims were arbitrable); Elwell v. Google, Inc.,

No. 05 Civ. 6498 (DLC), 2006 WL 217978, at *4 (S.D.N.Y. Jan. 30, 2006) (Title VII claims based on gender discrimination and retaliation arbitrable); Maye v. Smith Barney Inc., 897 F. Supp. 100, 109-10 (S.D.N.Y. 1995) (Title VII claims based on sexual harassment arbitrable); Hall v. MetLife Res./Div. of Metro. Life Ins. Co., No. 94 Civ. 0358 (JFK), 1995 WL 258061, at *3 (S.D.N.Y. May 3, 1995) (Title VII claims based on gender and race discrimination arbitrable); DuBois v. Macy's East Inc., No. 06-CV-6522 (NGG/LB), 2007 WL 3193169, at *4-5 (E.D.N.Y. July 13, 2007) (granting motion to compel arbitration of discrimination claims based on company's arbitration plan); Baldeo v. Darden Rests., Inc., No. 04-CV-2185 (JG), 2005 WL 44703, at *3 (E.D.N.Y. Jan. 11, 2005) (stating that "strong presumption in favor of arbitration has survived the greater scrutiny given to the use of mandatory pre-dispute arbitration agreements, such as the agreement at issue here, to resolve claims of employment discrimination" and granting motion to compel arbitration of New York State Human Rights Law and the New York City Human Rights Law claims based on dispute resolution procedure brochure signed by plaintiff when she was hired); Litaker v. Lehman Bros. Holdings, Inc., No. 97 Civ. 1607 (DC), 1999 WL 619638 (S.D.N.Y. Aug. 16, 1999) (motion to compel arbitration of Title VII claims granted based on agreement plaintiff signed when she applied for employment); Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 634-35, 601 N.Y.S.2d 686, 691 (1993) (holding that plaintiffs' state Human Rights Law claims should be submitted to arbitration under the terms of the arbitration clause in the U-4 forms they signed); Nardi v. Povich, 12 Misc.3d 1188(A), at *8, 824 N.Y.S.2d 764 (table) (N.Y. Sup. Ct. 2006) (granting motion to compel arbitration of discrimination claims based on valid arbitration clause in an employment agreement signed by plaintiff, pursuant to the FAA).

Accordingly, this Court should grant Defendants' motion to compel in accordance with the parties' valid and binding arbitration agreement, and stay the instant action pending arbitration.

## II.    THIS COURT SHOULD REJECT PLAINTIFF'S UNAVAILING ARGUMENTS THAT SHE SHOULD BE RELIEVED OF HER OBLIGATION TO ARBITRATE

### A.    Plaintiff Cannot Escape Her Duty To Arbitrate By Claiming She Does Not Remember Signing The Agreement To Arbitrate

Plaintiff's allegation in her Complaint that she "had no recollection of her own of having signed [the] arbitration agreement" (Compl. ¶ 46) is immaterial.  See Stern v. Espeed, Inc., No. 06 Civ. 958 (PKC), 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) (holding that plaintiff's lack of recollection of signing arbitration agreement was insufficient to defeat defendant's motion to compel); Gilmore v. Shearson/American Express, Inc. 668 F. Supp. 314, 320 (S.D.N.Y. 1987) (granting motion to compel arbitration and rejecting plaintiffs' argument that he should not be bound because he had no recollection of even having seen or signed the arbitration agreement).  Indeed, Plaintiff does not dispute having signed the Agreement or that the signature at the end of the Agreement is hers.  She certainly cannot now escape the terms to which she explicitly agreed simply because she later had "forgotten about" the Agreement.

### B.    Defendants Have Not Waived Their Right To Enforce The Parties' Agreement To Arbitrate

Plaintiff's claim that Defendants somehow waived their right to enforce the Agreement is equally without merit.  "A waiver of arbitration is not to be lightly inferred."  Haenel v. Washington Mut. Bank, No. CV 07-2320, 2007 WL 4326828, at *3 (E.D.N.Y. Dec. 6, 2007).  Indeed, "[b]ecause of the strong federal policy favoring arbitration, courts resolve doubts as to whether waiver occurred in favor of arbitration."  Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 130 (2d Cir. 1997) (citation omitted); see also American Express Fin. Advisors, Inc. v. Zito,

45 F. Supp. 2d 230, 234 (E.D.N.Y. 1999) (because federal policy favors arbitration, a waiver of arbitration is not to be lightly inferred).  A party's actions <u>may</u> amount to waiver only if such actions are <u>inconsistent with its right to arbitrate</u>.  <u>See</u> <u>PPG Indus. v. Webster Auto Parts</u>, 128 F.3d 103, 109 (2d Cir. 1997); <u>Doctor's Assocs., Inc. v. Distajo</u>, 66 F.3d 438, 455 (2d Cir. 1995) ("A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right.") (quotation omitted); <u>see also</u> <u>Fein v. Gen. Elec. Co.</u>, 40 A.D.3d 807, 808, 835 N.Y.S.2d 736, 738 (2d Dep't 2007) ("A determination that a party has waived the right to arbitrate requires a finding that the party engaged in litigation to such an extent as to manifest . . . a preference clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration . . . and thereby elected to litigate rather than arbitrate.") (quotations omitted).

Defendants' actions were <u>never</u> inconsistent with an intent to arbitrate – in fact, Defendants' intentions to enforce the Agreement and compel arbitration could not have been more clear and unequivocal.  In fact, as soon as Plaintiff's counsel asked if counsel for Defendants would accept service of a state court complaint in January 2007 (a full *five months before* Plaintiff filed the instant Complaint), counsel for Defendants responded that they would accept service of a *demand for arbitration*, reminding counsel of his client's obligation to arbitrate, providing a copy of the Agreement to Plaintiff's counsel at that time (at his request), and putting Plaintiff's counsel on notice that that if Plaintiff "initiate[d] a state court action, we will be forced to move to compel arbitration and will seek attorneys' fees and costs associated therewith."  (Joyce Decl. ¶ 12, Ex. F.)

Likewise, when Plaintiff's counsel contacted counsel for Defendants two months later and again indicated that Plaintiff would be filing a complaint in state court, counsel for

Defendants once again reminded Plaintiff's counsel that his client was obligated to arbitrate the dispute, that filing such a complaint would be in direct violation of the parties' Agreement, and that Terminix would be forced to make a motion to compel arbitration. (Id. ¶ 16.) Nevertheless, Plaintiff filed the instant Complaint in state court (after another two months had passed). Even after this Complaint was filed, counsel for Defendants contacted counsel for Plaintiff to make a good faith effort to ask Plaintiff to withdraw her Complaint and instead file a demand for arbitration, so that the parties would not have to engage in unnecessary motion practice and waste the time and resources of this Court. (Id.) Remarkably, Plaintiff still refused.

Defendants, therefore, have not engaged in any conduct that is inconsistent with an intention to enforce the parties' agreement to arbitrate. Indeed, courts have been reluctant to find waiver even when a party has actually engaged in a certain amount of litigation of the matter – which is clearly quite the opposite of the case here. See, e.g., Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457 (2d Cir. 1985) (defendants did not waive right to compel arbitration by participating in discovery for two years and by filing motion to dismiss under Rule 12(b)(6), since they had previously asserted arbitration as a defense in their answer); DiCrisci v. Lyndon Guar. Bank of New York, 807 F. Supp. 947, 952 (W.D.N.Y. 1992) (rejecting plaintiff's argument that defendants were estopped from demanding arbitration because they never raised the issue of arbitration with the State Division of Human Rights or the EEOC where defendants promptly raised the issue early in the federal court action); Herzog, 2008 WL 880184, at *8-9 (no waiver where "[d]espite the history of protracted litigation of this matter. . . . [defendant's] motion practice was consistent with his desire to proceed with arbitration").

By contrast, in those cases where waiver *was* deemed to have occurred, the party had engaged in protracted litigation entirely inconsistent with any intent to demand arbitration. See,

e.g., Manos v. Geissler, 321 F. Supp. 2d 588, 564 (S.D.N.Y. 2004) (defendants actively participated in litigation for 18 months, including conference calls before the court and extensive pre-trial discovery); Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 26 (2d Cir. 1995) (finding sufficient basis for waiver under compelling circumstances, where defendant's claim to compel arbitration was made "[o]nly at the eleventh hour, with trial imminent," and after the completion of discovery and the filing of a summary judgment motion).[5]

Moreover, to the extent Plaintiff suggests in her Complaint the argument that Defendants somehow waived their right to arbitrate simply because (1) Plaintiff's counsel did not realize his client was subject to an arbitration agreement; (2) he allegedly did not learn of the existence of the Agreement until counsel for Defendants told him in January 2007; and (3) that Defendants' counsel "maliciously" and "intentionally" "hid" the existence of the Agreement until after Plaintiff chose to withdraw her Complaint from the NYSDHR, there is simply no basis for this argument, both in the facts and the law, nor can Plaintiff point to any cases supporting such a theory.  As already set out above (supra, Statement of Facts, Section 2), the existence of the Agreement was not relevant to the proceedings before the State Division, as neither the law nor the Agreement itself precluded Plaintiff from pursuing a claim before the State Division or

---

[5]    Nor can Plaintiff argue that Defendants' removal to federal court based on diversity jurisdiction in order to file this motion can be deemed a waiver.  See Brandt/Polaris Corp. v. Polaris Indus., No. 95 Civ. 1321 (HB), 1995 WL 422138, at *1 (S.D.N.Y. July 17, 1995) (rejecting argument that removal to federal court was waiver of arbitration clause); Allied Bldg. Inspectors Int'l Union of Operating Eng'rs, Local No. 211 v. Office of Labor Relations, 45 N.Y.2d 735, 738, 408 N.Y.S.2d 476, 478 (1978) (holding that "the city's reasons for seeking removal, and later moving to dismiss in the Federal court, were not inconsistent with an intention to arbitrate"); Malone Golf Club, Inc. v. Moore Golf, Inc., 147 A.D.2d 879, 880-81, 538 N.Y.S.2d 100, 101 (3d Dep't 1989) (rejecting plaintiff's argument that defendant had waived its right to arbitrate when it removed the lawsuit to federal court, reasoning that "[o]nce the jurisdiction issue was resolved and the complaint was served, defendant raised the defense of arbitration in timely fashion").  Each case deciding this issue had held that a party's removal to federal court is not a waiver of an arbitration agreement.

16

EEOC.  Nor can Plaintiff show any prejudice, since Defendants have never engaged in any behavior in violation of the Arbitration Agreement.[6]

As such, any argument Plaintiff may advance that Defendants somehow waived their right to enforce the parties agreement must be rejected out of hand, and the Court should enforce the Arbitration Agreement.

### III. DEFENDANTS SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS FOR HAVING TO BRING THIS ACTION TO COMPEL ARBITRATION, GIVEN THE CLEAR APPLICATION OF THE AGREEMENT AND PLAINTIFF'S BAD FAITH REFUSAL TO WITHDRAW THE COMPLAINT

Defendants should also be awarded costs and attorneys' fees, pursuant to Rule 11 of the Federal Rules of Civil Procedure, Section 1927 of Title 28 of the United States Code, and the equitable powers of this Court.  Plaintiff's disregard for her clear obligation to arbitrate and bad faith refusal to withdraw her Complaint after multiple good faith warnings by Defendant caused the imposition of attorneys' fees and costs that Defendants were forced to unnecessarily expend in making what should have been an unnecessary motion.  See Seafarers Int'l Union of N. Am. v. Point Vail Co., No. 84 Civ. 2689 (PKL), 1985 WL 5940, at *2-3 (S.D.N.Y. Feb. 7, 1985) (granting costs and attorneys' fees associated with motion to compel arbitration where party's refusal to proceed to arbitration in accordance with the agreement and subsequent conduct – including "preposterous" arguments and accusations against opposing counsel – occurred in bad faith and purely for reasons of harassment and delay and to confuse the issues); Farino v. Advest, Inc., 111 F.R.D. 345, 348-49 (E.D.N.Y. 1986) (imposing sanctions against plaintiffs' counsel who raised frivolous claims in opposition to defendant's motion to compel arbitration); Feffer v.

---

[6]      Indeed, even if Plaintiff were to argue – without any legal support – that she withdrew her complaint with the Division based on her "forgetting" or not knowing of the Arbitration Agreement, Plaintiff tellingly never took any steps even to attempt to reinstate her complaint with the Division after "remembering" that she was subject to an agreement to arbitrate, and Plaintiff is still left with a more than adequate remedy, as she is free to pursue her claims in the arbitral forum in which she expressly agreed to have her claims heard.

<u>Goodkind, Wechsler, Labaton & Rudoff</u>, 152 Misc.2d 812, 815, 578 N.Y.S.2d 802, 804 (N.Y. Sup. Ct. 1991) (directing plaintiff to pay attorneys' fees to defendant for motion to compel arbitration). Plaintiff's insistence on pursuing a claim in court in violation of the Agreement produced a pleading that was not "well grounded in fact," and has "multiplie[d] the proceedings . . . unreasonably and vexatiously," thereby warranting the imposition of sanctions, attorneys' fees, and costs against Plaintiff. 28 U.S.C. § 1927; Fed. R. Civ. P. 11.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that this motion be granted and Order entered (1) compelling arbitration of this matter in accordance with the parties' arbitration agreement; (2) staying this action until such time as those arbitration proceedings have been concluded; and (3) granting Defendants the attorneys' fees and costs associated with making this motion and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        June 20, 2008

                    SEYFARTH SHAW LLP


                    By   s/ Dov Kesselman
                         Dov Kesselman (DK-6571)
                         Rosemary Joyce (RJ-7393)
                    620 Eighth Avenue, 32nd Floor
                    New York, New York 10018-1405
                    (212) 218-5500

                    Attorneys for Defendants Terminix International,
                      Inc. and The ServiceMaster Company

18