UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
ANDREA GRAVAGNA,                     :
                                     :  No. 08-cv-5448 (LAK-THK)
                Plaintiff,           :
                                     :
     v.                              :
                                     :
TERMINIX INTERNATIONAL, INC.,        :
THE SERVICEMASTER COMPANY,           :
JENNIFER HOWARD,                     :
                                     :
                Defendants.          :
------------------------------------ x

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO
# COMPEL ARBITRATION AND TO STAY THE PROCEEDINGS

Dated: New York, New York
       July 3, 2008

Of Counsel:

    Dov Kesselman (DK-6571)
    Rosemary Joyce (RJ-7393)

SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendants
Terminix International, Inc. and The ServiceMaster Company

NY1 26519600.2

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.      THERE IS NO DISPUTE THAT THE ARBITRATION AGREEMENT IS VALID AND APPLIES TO THE CLAIMS IN THIS CASE. ..................................................................................................2

    II.     PLAINTIFF'S OPPOSITION IS RIFE WITH MISREPRESENTATIONS ...............................................................................3

    III.    THERE IS NO BASIS FOR PLAINTIFF'S ARGUMENT THAT DEFENDANTS WAIVED THEIR RIGHT TO ARBITRATION THROUGH THEIR CONDUCT ..................................................................6

    IV.    PLAINTIFF CANNOT SERIOUSLY ARGUE THAT DEFENDANTS INTENDED TO WAIVE THEIR RIGHT TO COMPEL ARBITRATION ..............................................................................8

    V.     PLAINTIFF'S BREACH OF CONTRACT ARGUMENT STRAINS CREDULITY. ....................................................................................9

    VI.    PLAINTIFF'S OPPOSITION PAPERS SERVE ONLY TO REINFORCE THE APPROPRIATENESS OF AN AWARD OF SANCTIONS AND FEES ...............................................................................9

CONCLUSION .................................................................................................................................10

Defendants Terminix International, Inc. ("Terminix") and the ServiceMaster Company (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion for an order: (a) compelling arbitration of the claims alleged in the Verified Complaint of plaintiff Andrea Gravagna; (b) staying this litigation pending the conclusion of arbitration proceedings; and (c) granting Defendants their attorneys' fees and costs in bringing this motion.[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition confirms that Defendants' motion to compel should be granted. Plaintiff does not dispute that she signed a valid and binding Agreement to arbitrate and that the Agreement covers all of her claims. Plaintiff also readily concedes — as she must — that enforcement of arbitration agreements are "favored status," and further admits that Defendants have not engaged in any litigation that could serve as a waiver of their right to arbitration. These facts compel the conclusion that Defendants' motion to compel arbitration must be granted.

Because of the clear result called for here, Plaintiff desperately engages in the contemptible attempt to repeat over and over — in almost mantra-like manner — that Defendants were somehow "duplicitous" and "deceitful" in their conduct, in the hope that merely by repeating these outrageous allegations, no matter how baseless or unsupported, the Court will simply ignore that they are supported by nothing but hyperbole and conspiracy theories, that Plaintiff had already decided to withdraw her complaint from the New York State Division of Human Rights (the "NYSDHR") before even speaking with Defendants' counsel because she did not want to proceed with an impending fact-finding conference, that Plaintiff tellingly made no

---

[1] Defendants' Memorandum of Law in Support of Their Motion to Compel Arbitration and to Stay the Proceedings is cited herein as "Defs. Mem." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration is cited herein as "Pl. Opp."

1

effort to reinstate her complaint with the NYSDHR even after learning of the Arbitration Agreement (because in fact Plaintiff did not want to pursue that avenue), and that there is simply no legal support for Plaintiff's efforts to avoid the plainly enforceable Arbitration Agreement. Even further, Plaintiff's opposition asserts numerous striking misrepresentations of the facts and presents arguments that are simply internally and logically inconsistent, all in order to build up this alleged "duplicitous scheme."

At bottom, Plaintiff's contemptible effort to fabricate a supposed elaborate plot to "trick" and "trap" Plaintiff into withdrawing her complaint from the Division is belied by the facts, and represents nothing more than a desperate effort to avoid her rash last-minute effort on January 9, 2008 to avoid a January 15, 2008 hearing before the NYSDHR by blaming everyone but herself (and her counsel). As set forth in more detail below, this Court should reject Plaintiff's legally and factually flawed arguments in their entirety and grant Defendants' motion.

## ARGUMENT

### I. THERE IS NO DISPUTE THAT THE ARBITRATION AGREEMENT IS VALID AND APPLIES TO THE CLAIMS IN THIS CASE

Plaintiff concedes — as she must — that both federal and New York policy strongly favor arbitration. (Pl. Opp. at 12; Defs. Mem. at 9.) Moreover, Plaintiff does not — and cannot — dispute that the Agreement to arbitrate Plaintiff's employment-related claims is valid, and that Plaintiff's claims fall squarely within the scope of the Agreement. (See Pl. Opp., *passim*; see also Defs. Mem. at 9-13.) Accordingly, there is simply no dispute that the terms of the parties' valid and binding Arbitration Agreement, absent Plaintiff's baseless arguments of "waiver," compel the stay of the instant action pending arbitration. (See Declaration of Rosemary Joyce, dated June 19, 2008 ("Joyce Decl."), Exh. A.)

## II. PLAINTIFF'S OPPOSITION IS RIFE WITH MISREPRESENTATIONS

The entirety of Plaintiff's opposition is premised on the notion that Defendants "duped" Plaintiff into withdrawing her complaint with the NYSDHR by purposely waiting to disclose the arbitration agreement until after they learned that Plaintiff had withdrawn her complaint. Indeed, as Plaintiff puts it clearly at the very outset: "Defendants purposefully and deceitfully failed to timely disclose the existence of an arbitration agreement <u>in order to induce Plaintiff to seek a dismissal of its complaint before the [NYSDHR]</u>." (Pl. Opp. at 1)  However, Plaintiff can make this argument only by ignoring her own papers (and those of Defendants) that set out what actually happened. Indeed, a review of Plaintiff's papers reveal a consistent pattern of misrepresentations of the "facts" upon which Plaintiff attempts to base her legal arguments:

First, Plaintiff's own papers reveal that rather than being "induced to seek a dismissal," it was Plaintiff's plan all along to withdraw the action, due to the approaching NYSDHR fact-finding conference. Indeed, Mr. Gottlieb (Plaintiff's counsel) admits that he spoke with Defendants' counsel for the first time on January 9, 2008. (Declaration of David Gottlieb, dated June 26, 2008 ("Gottlieb Decl.") ¶ 11.) In this very first call, before anything else, Plaintiff's counsel "stated Plaintiff's intention to remove the action from the Division of Human Rights, prior to the conference scheduled for January 15, 2008." (<u>Id.</u>)  As such, Defendants did nothing to "induce" Plaintiff's decision — this was Plaintiff's plan of action from the start.

In yet another misrepresentation of the facts in an attempt to manufacture a picture of misconduct, Plaintiff claims that Defendants misled Plaintiff's counsel "during the <u>many conversations</u> between counsel when Plaintiff advised that it would seek dismissal specifically to commence an action in State Court." (Pl. Opp. at 1 (emphasis added).  Yet, Mr. Gottlieb admits in his Declaration that there were not "<u>many conversations</u>," but instead only <u>one</u>, on January 9, 2008. (Gottlieb Decl. ¶ 11.)  (Notably, Ms. Joyce did not take a position on Plaintiff's stated

3

intention to withdraw the action, nor agree with Plaintiff's alleged plan to commence a State Court action, but instead merely stated that she would consult with our client regarding potential settlement and respond. (Id.; Joyce Decl. ¶ 7).) Plaintiff's counsel did <u>not</u> wait to hear from Ms. Joyce or call back, and instead elected to unilaterally withdraw the NYSDHR complaint on January 11th, rather than go forward with the fact-finding conference. ((Joyce Decl. ¶ 9; Gottlieb Decl. ¶ 14.)[2] Plaintiff's counsel's attempt to paint a false picture of "many conversations" is representative of the entirety of his allegations here.

Plaintiff similarly claims that that Defendants "miraculously" and "spontaneously" chose to "disclose" the existence of the Agreement on January 16, 2008, only after Plaintiff's complaint had been dismissed by the NYSDHR on January 15, 2008, in order to imply that Defendants learned on January 15, 2008 that the case had been officially dismissed, and therefore cunningly sent out the Arbitration Agreement "the very next day." (Pl. Opp. at 1, 5; Gottlieb Decl. ¶¶ 15-16.) Once again, it is Plaintiff that is deceitful in misrepresenting the facts. In fact, while the actual Annulment and Determination is dated January 15, 2008, it was only *mailed* (not faxed) to defense counsel on that date, and did not reach them until well *after* defense counsel's January 16, 2008 discussion with Plaintiff's counsel. (Pl. Opp., Exh. K; Joyce Rep. Decl. ¶ 5.) In fact, the reason Ms. Joyce called on January 16, 2008 was because she was unable to speak with her client until after Friday, January 11, 2008 (after Plaintiff had already unilaterally withdrawn the action from the Division), and after confirming the applicability of the

---

[2] In yet another example of Plaintiff's misrepresentations, Mr. Gottlieb's Declaration is purposely vague and does not disclose the timing of the subsequent telephone call he claims to have had with Ms. Joyce on January 11, in an attempt to give the impression in the numbering of the paragraphs that he spoke to Ms. Joyce <u>before</u> faxing his letter, without having to actually say so under oath. (See Gottlieb Decl. ¶¶ 13-14; cf. Joyce Decl. ¶ 9 (providing the precise timing).) In fact, he faxed his January 11, 2008 letter withdrawing the action in the morning, having never spoken with Ms. Joyce beforehand – or at any other time – that day. (See Reply Declaration of Rosemary Joyce, dated July 3, 2008 ("Joyce Rep. Decl.") ¶ 3.) Indeed, Plaintiff's counsel's January 11th letter makes no reference to any earlier conversation with Ms. Joyce. (Id.; Joyce Decl., Exh. E.)

4

Agreement, while engaged in other work as well. (Joyce Decl. ¶ 11.) Plaintiff's attempt to portray the timing of Ms. Joyce's call as evidence of misconduct is just more gamesmanship, since Defendants were not even aware of the official annulment until well after January 16, 2008.[3]

In yet another striking misrepresentation aimed at building up Plaintiff's conspiracy theory, Plaintiff actually asserts that defense counsel "encouraged Plaintiff's counsel to dismiss the action from the Division." (Pl. Opp. at 7-8.) Tellingly, Plaintiff's opposition offers no evidentiary citation to support this claim, and even Mr. Gottlieb's declaration does not take this position. (Gottlieb Decl. ¶ 14.)

Finally, while Plaintiff claims that "she has been deprived of a statutory remedy to have her complaint heard before the Division of Human Rights" (Pl. Opp. at 2), Plaintiff does not dispute that she made no attempt to reinstate her Complaint with the NYSDHR, even after learning just one day after its annulment that there was an Arbitration Agreement. This fact further establishes that the failure to proceed before the NYSDHR is the fault of Plaintiff alone.[4]

At bottom, Plaintiff's situation is due solely to her counsel's delaying to the last minute her decision to withdraw from the NYSDHR, forcing Plaintiff to act rashly and without giving

---

[3]     Plaintiff also misleads the Court by stating that defense counsel "waited five days to disclose the arbitration agreement" (Pl. Opp. at 5) by neglecting to mention that two of those days were a weekend and that Plaintiff's counsel had already unilaterally withdrawn the complaint on January 11th (see Joyce Decl., Exh. E) rendering a quicker response irrelevant. Plaintiff similarly misrepresents to the Court that Ms. Joyce "affirmatively admitted that the arbitration agreement 'became apparent' on January 11, 2008." (Pl. Opp. at 8.) As the Declaration of Rosemary Joyce makes clear, the existence and applicability of the Agreement became apparent only after receipt of the January 11, 2008 letter, after which she conferred with her client regarding the acceptance of service of a state court complaint and reviewed the files over the course of the next few business days. (Joyce Decl. ¶¶ 11-12.)

[4]     Plaintiff's counsel also boldly asserts that "correspondence to both the State Division and Ms. Joyce explained that a State Court action would be commenced." (Gottlieb Decl. ¶ 14; Pl. Opp. at 4.) However, his own correspondence shows that he did not state to the NYSDHR that he would be filing a state Court action (see Pl. Opp., Exh. K), and in his correspondence to Ms. Joyce, he explicitly stated that another option under consideration was the filing of an EEOC charge. (Pl. Opp., Exh. J.)

5

Defendants the time to consider and respond to Plaintiff's actions. Her allegation of intentional misconduct by Defendants is utterly without merit, and should be rejected as such.

**III.  THERE IS NO BASIS FOR PLAINTIFF'S ARGUMENT THAT DEFENDANTS WAIVED THEIR RIGHT TO ARBITRATION THROUGH THEIR CONDUCT**

As set out in Defendants' initial moving papers, the courts will not infer a waiver of arbitration absent a clear waiver, and will "resolve doubts as to whether waiver occurred in favor of arbitration." Doctor's Assocs. v. Distajo, 107 F.3d 126, 130 (2d Cir. 1997). See also Defs. Mem. at 13-14 (citing cases). Plaintiff concedes that "waiver of arbitration rights on the basis of substantive prejudice is most often found where protracted litigation has occurred" (Pl. Opp. at 9), and she readily admits that she has not suffered any "prejudice due to excessive cost and time delay" (Pl. Opp. at 6). Plaintiff nevertheless claims that she suffered "substantive prejudice" that should result in waiver because she was purportedly "deprived of her statutory right to have her employment discrimination and retaliation case heard before the Division of Human Rights." (Pl. Opp. at 6.)

As already noted above, the facts establish that Defendants played no role in Plaintiff's decision to withdraw her complaint from the NYSDHR, nor did it engage in any misconduct, such that this argument does not even get off the ground. (*Supra*, pp 3-6.)

As importantly, Plaintiff admittedly cannot cite to a single case to support her argument that Defendants can be held to have waived their right to arbitration under the circumstances of this case. (Pl. Opp. at 9.) Indeed, in every case cited by Plaintiff, waiver was found only where there was protracted litigation accompanied by substantial motion practice or discovery, and never on the basis of "substantive prejudice." See Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002) (no waiver where even "[t]hough there was a significant length of time between the filing of the complaint and the assertion of [defendant's] right to

6

arbitrate, there was no evidence of extensive discovery or substantive motions by [defendant]"); Cotton v. Slone, 4 F.3d 176, 179-80 (2d Cir. 1993) (waiver established where plaintiff "actively litigated this dispute in federal court," conducted extensive discovery, and "imposed unnecessary expense and delay on [plaintiff]"); Kramer v. Hammond, 943 F.2d 176, 179-80 (2d Cir. 1991) (waiver established where plaintiff litigated issues to the highest state courts of New York and South Carolina, petitioned the United State Supreme Court for a writ of certiorari, and engaged in "aggressive, protracted litigation for over a four-year period" before invoking arbitration clause); see also Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 122 (2d Cir. 1991) (holding there was no waiver even though defendant did not raise arbitration after knowing about his rights for three years). Indeed, Plaintiff's argument of a "substantive waiver" is based on nothing more than a misrepresentation of Thyssen, Inc. and its holding. As the court in Thyssen, Inc. explained, a "substantive waiver" occurs where "a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." Thyssen, Inc., 310 F.3d at 105. Defendants here did not lose any motion on the merits and then seek arbitration in order to achieve a different result. To the contrary, it was Plaintiff that was trying to avoid a decision on the merits by withdrawing the case from the Division at the last minute before the January 15, 2008 fact-finding conference could be held, while Defendants were continuing to prepare for their attendance at the hearing. (Joyce Decl. ¶ 10.)

Here, Defendants engaged in absolutely no litigation or any delay (let alone protracted litigation or excessive delay). Indeed, Defendants notified Plaintiff of their intent to invoke the arbitration Agreement on multiple occasions before she filed her action in court and again immediately after Plaintiff's Complaint was filed, before any litigation ensued. To the extent Plaintiff claims to have suffered "substantive prejudice" by having her complaint with the

7

NY1 26519600.2

NYSDHR withdrawn, that was Plaintiff's own choice, and it was compounded by her failure to seek reinstatement of the Complaint after learning of the Arbitration Agreement.  Moreover, even if it were true that Plaintiff "suffered" the loss of a substantive right, the remedy would be to permit her to return to the NYSDHR to have her complaint heard there, <u>not</u> to escape from her agreement to arbitrate her claims — an agreement that she voluntarily and willfully entered into long before any of the allegations made here ever arose.

## IV. PLAINTIFF CANNOT SERIOUSLY ARGUE THAT DEFENDANTS INTENDED TO WAIVE THEIR RIGHT TO COMPEL ARBITRATION

Plaintiff also argues that "Defense counsel unequivocally evinced intent *[sic]* to waive the right to arbitrate."  (Pl. Opp. at 10.)  As an initial matter, it is undisputed that Defendants expressly stated that they would <u>not</u> accept service of a State Court complaint and that the Arbitration Agreement signed by Plaintiff required that she arbitrate her claims within <u>days</u> of their first conversation with Plaintiff's counsel.  (Joyce Decl. ¶¶ 12, 14, 16, Exh. F;  Gottlieb Decl. ¶ 16.)  As such, Plaintiff's suggestion that Defendants in any way evinced an intent to waive arbitration is simply contrary to the facts.  Indeed, this argument is even inconsistent with Plaintiff's own theories of Defendants' supposed plot to remove the case from the NYSDHR. Plaintiff's opposition earlier claims that <u>the entire purpose</u> of Defendants "inducing" Plaintiff to withdraw her complaint from the Division was because they allegedly "<u>clearly preferred the arbitral forum</u> to that of the Division of Human Rights."  (Pl. Opp. at 1.)  Plaintiff cannot argue both that Defendants "clearly preferred the arbitral forum" as the reason for their actions, and simultaneously claim that they all along intended to waive their right to arbitrate.  Not surprisingly, the single case cited by Plaintiff for this argument does not support it either.  See <u>Great N. Assocs. v. Continental Cas. Co.</u>, 192 A.D.2d 976, 978-79, 596 N.Y.S.2d 938, 940 (3d Dep't 1993) ("Crucial to the establishment of waiver in the arbitration context is the presence of

8

conduct by the party seeking to compel arbitration which reflects a positive and unequivocal election to ignore his or her arbitration rights."). There is simply no basis for Plaintiff's suggestion that Defendants in any way indicated an intent to waive their right to arbitrate any disputes.

V.     **PLAINTIFF'S BREACH OF CONTRACT ARGUMENT STRAINS CREDULITY**

Plaintiff also argues that Defendants somehow breached their agreement to allow Plaintiff to "file an Administrative Complaint," once again on the false assumption that Defendants did anything to "dupe" Plaintiff into withdrawing her Complaint. As noted above, Defendants did nothing to dupe Plaintiff, and thus her argument ends even before it begins. Moreover, the facts show that Defendants fully allowed Plaintiff to pursue her administrative claims — indeed, Defendants actively participated in the administrative process, responded to Plaintiff's administrative complaint by fully partaking in the NYSDHR process, submitting its Statement of Position, responding to the Division's requests for additional information shortly before the scheduled fact-finding conference, and fully preparing for the fact-finding conference before the Division right up to the point that Plaintiff unilaterally withdrew her complaint. (See Joyce Decl. ¶¶ 3-5, 10.) Finally, even a surface review of the Arbitration Agreement (see Joyce Decl., Exh. A) makes clear that the provision merely provides that the mandatory arbitration provisions do not apply to complaints to administrative bodies like the NYSDHR, not that Defendants undertook any obligations to assist her in those complaints.

VI.    **PLAINTIFF'S OPPOSITION PAPERS SERVE ONLY TO REINFORCE THE APPROPRIATENESS OF AN AWARD OF SANCTIONS AND FEES**

Plaintiff's bad faith filing of a litigation in the face of an admittedly applicable Arbitration Agreement, and after having been given an opportunity to correct her mistake without the need for motion practice, has now been compounded by her submission of papers

9

containing numerous misrepresentations (see *supra*, pp 3-6), and putting forth arguments that lack any legal precedent. As set forth in Defendants' initial moving papers, Defendants seek their attorneys' fees and costs in having had to bring this motion in the face of a clear Arbitration Agreement, and for Plaintiff's clear misrepresentations of the facts in her opposition papers. (See Defs. Mem. at 17-18.)

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' initial memorandum of law, Defendants respectfully request that this motion be granted and Order entered (1) compelling arbitration of this matter in accordance with the parties' arbitration Agreement; (2) staying this action until such time as those arbitration proceedings have been concluded; and (3) granting Defendants the attorneys' fees and costs associated with making this motion and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         July 3, 2008

                                    SEYFARTH SHAW LLP


                                    By   s/ Dov Kesselman
                                         Dov Kesselman (DK-6571)
                                         Rosemary Joyce (RJ-7393)
                                    620 Eighth Avenue, 32nd Floor
                                    New York, New York 10018-1405
                                    (212) 218-5500

                                    Attorneys for Defendants Terminix International,
                                       Inc. and The ServiceMaster Company

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2008, I electronically filed the foregoing Defendants' Reply Memorandum of Law in Further Support of Their Motion to Compel Arbitration and to Stay the Proceedings, and the Reply Declaration of Rosemary Joyce, Esq., with the Clerk of the District Court using its CM/ECF system. And, I hereby certify that on July 3, 2008, true and correct copies of the foregoing documents were served by FedEx, overnight delivery, postage prepaid, on counsel for plaintiff at the following address:

> David Gottlieb, Esq.
> Mark L. Lubelsky and Associates
> 123 West 18th Street, 8th Floor
> New York, New York 10011
>
> *Attorneys for Plaintiff*

*[signature]*
Rosemary Joyce (RJ-7383)